## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WL HOMES, LLC, <u>et</u> <u>al.</u>, | ) | Case No. 09-10571 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association, | ) ) ) | Adv. No. 09-50514 |
| | ) | |
| | ) | Related to Docket Nos. 61, 62, 70, 71, |
| Plaintiff, | ) | and 72 |
| | ) | |
| v. | ) | |
| | ) | |
| WL HOMES, LLC (Debtor), a Delaware Limited Liability Company; JLH INSURANCE CORPORATION, an Arizona Corporation; and DOES 1 through 100, inclusive, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Thomas M. Horan
Francis A. Monaco, Jr.
Womble Carlyle Sandridge & Rice
PLLC
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801

Gregory A. Bray
Linda Dakin-Grimm
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

James D. Whooley
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017

Carl D. Neff
Daniel K. Astin
John D. McLaughlin, Jr.
Joseph J. McMahon, Jr.
Ciardi Ciardi & Astin
919 Market Street, Suite 700
Wilmington, DE 19801

Albert A. Ciardi, III
Carl E. Singley
William Baldini
Ciardi Ciardi & Astin
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103

Mark H. Ralston
Ciardi Ciardi & Astin
2603 Oak Lawn Avenue, Suite 200
Dallas, TX 75219

Rick Steinberg
Ciardi Ciardi & Astin
100 Church Street, 8th Floor
New York, NY 10007

*Counsel for Plaintiff Wachovia Bank*                   *Counsel for Defendants George L. Miller, Trustee for the Debtors' Estates and JLH Corporation*

## OPINION[1]

Before the Court are cross-motions for summary judgment filed by Wachovia Bank, National Association ("Wachovia"), and George L. Miller, Chapter 7 Trustee for the Estate of WL Homes, LLC (the "Trustee"), respectfully. For the following reasons, the Court will grant the motion for summary judgment filed by Wachovia, and deny the motion for summary judgment filed by the Trustee.

## I.  INTRODUCTION

This adversary proceeding is about the ability of a parent company to grant a security interest in an asset of its subsidiary and the extent to which a third party may enforce such a security interest. The resolution of this issue turns on the legal significance that should be accorded to the actions of an agent of both the parent and the subsidiary, wearing multiple hats and presumptively acting on behalf of both entities. The Court concludes that the fact that an agent may represent more than one principal does not alter the well-established doctrine that an

---

[1]      Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Opinion constitutes the Court's findings of fact and conclusions of law.

2

agent with authority is capable of binding its principal.  Accordingly, the Court finds that a security interest in the subsidiary's asset granted by the parent's agent to a third party is enforceable if it otherwise satisfies the requirements set forth in Article 9 of the Uniform Commercial Code ("U.C.C.").

## II.  <u>BACKGROUND</u>

On February 19, 2009 (the "Petition Date"), WL Homes, LLC ("WL Homes") and various of its affiliates (collectively with WL Homes, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Shortly thereafter, the Debtors' chapter 11 bankruptcy cases were converted to cases under chapter 7 and George L. Miller was appointed the chapter 7 trustee for the purpose of administering the Debtors' estates.

Prior to the Petition Date, WL Homes had formed JLH Insurance Corporation ("JLH") under the Arizona Department of Insurance as a captive and wholly owned insurance company for the express purpose of paying claims against WL Homes arising out of its business activities.  WL Homes capitalized JLH by depositing $10 million into a bank account (the "JLH Account").  JLH remains a non-debtor affiliate, but as a wholly owned subsidiary of WL Homes, it is under the control of the Trustee.

In 2007, WL Homes entered into a line of credit loan agreement (the "Loan Agreement") with Wachovia Bank.  To induce the Loan Agreement and to secure WL Homes' repayment obligation, the Loan Agreement includes a provision (the "Security Interest Provision") pursuant to which WL Homes granted a security interest to Wachovia in the JLH Account and two other

deposit accounts held at Wachovia (the "Laing Luxury Accounts").  The Security Interest

Provision states, in relevant part:

> [WL Homes] shall maintain its . . . JLH Account . . . with
> [Wachovia].  The funds on deposit in the JLH Account shall at no
> time be less than $10,000,000.00.  [WL Homes] shall also maintain
> its Laing Luxury Accounts . . . with [Wachovia].  The JLH
> Account and the Laing Luxury Accounts are collectively referred
> to as the Deposit Accounts.  [WL Homes] grants to [Wachovia] a
> security interest in the Deposit Accounts.

Loan Agreement ¶ 6.5.

In 2008, WL Homes reaffirmed all of its obligations under the Loan Agreement to

Wachovia pursuant to two loan agreement letters (collectively, the "Loan Letters"), dated June

23, 2008 and July 31, 2008, respectively.  The Loan Letters were executed by Wayne Stelmar,

who at all relevant times was the CFO of WL Homes and the president of JLH.

On March 20, 2009, Wachovia commenced this adversary proceeding, seeking, inter alia,

a declaration that it holds a perfected security interest in the JLH Account and may enforce its

security interest to satisfy WL Homes' debt obligation to Wachovia under the Loan Agreement.

As of September 21, 2010, Wachovia contends that it is owed the principal amount of $10

million plus accrued interest in the amount of $1,105,486.

The parties have engaged in discovery.  Wachovia now moves for summary judgment,

seeking an order of the Court that it has an enforceable security interest in the JLH Account.[2]  In

---

[2]    The Court notes that Wachovia also seeks summary judgment as to the enforceability of
its security interest in the Laing Luxury Accounts.  However, this Opinion is limited to a
discussion of the enforceability of Wachovia's alleged security interest in the JLH Account.  The
Trustee does not dispute Wachovia's security interest in the Laing Luxury Accounts.  Although
the Trustee stated during oral argument his intention to file a fraudulent transfer action against
Wachovia with respect to the Laing Luxury Accounts, an examination of the Court's docket
reveals that no such action has been commenced, and under 11 U.S.C. § 546(a)(1), the deadline
to commence any avoidance actions passed on February 19, 2011.  The Court further notes that

response, the Trustee opposes summary judgment in favor of Wachovia, and cross-moves for summary judgment, seeking a declaration that the JLH Account could not have been legally pledged, and that JLH has neither authorized nor ratified the pledge by WL Homes of the JLH Account.

This matter has been fully briefed and argued, and it is now ripe for decision.

## III.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (K).

## IV.  DISCUSSION

### A.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).[3]  The Supreme Court

---

the Trustee's Answer [Adv. Docket No. 24] to Wachovia's Complaint [Adv. Docket No. 1] includes three counterclaims, among them a fraudulent transfer cause of action by JLH against Wachovia.  That counterclaim, however, concerns only the JLH Account and does not implicate the Laing Luxury Accounts.  Whereas the existence of an action by the Trustee with respect to the Laing Luxury Accounts would permit the Court to reserve judgment on the enforceability of Wachovia's security interest in these accounts, the absence of such action and the absence of any dispute as to the Laing Luxury Accounts requires the Court to conclude that Wachovia has an enforceable security interest in the Laing Luxury Accounts and thereby dispose of this issue. The remainder of the Opinion focuses entirely on the enforceability of Wachovia's asserted security interest in the JLH Account.

[3]     Federal Rule of Civil Procedure 56 was amended as of December 1, 2010.  Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c).  FED. R. CIV. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward

has explained that an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Supreme Court further explained that materiality is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment may be properly granted "as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (5th Cir. 1991), cert. denied, 504 U.S. 985 (1992).

The movant bears the burden of establishing the absence of a genuine dispute as to a material fact.  Celotex, 477 U.S. at 322-23 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citing FED. R. CIV. P. 56).

After the movant has made the requisite showing, the burden shifts to the non-movant to establish that summary judgment is not warranted.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(c) requires that a party "asserting that a fact cannot be or is genuinely disputed" has to support such an allegation

---

the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").

by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). Thus, a party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and instead must produce specific facts that establish the existence of a genuine dispute. Id. at 587. Without factual corroboration, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

In deciding a motion for summary judgment, the court must view all facts in the light most favorable to the non-movant to determine whether the movant is nonetheless entitled to judgment as a matter of law. Anderson, 477 U.S. at 261 n.2; Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (2003) (citation omitted). Moreover, the court must draw all inferences in favor of the non-movant and "where the non-moving party's evidence contradicts the movant's . . . the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994) (internal quotation marks omitted) (citation omitted). See also Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) ("Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's

allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.").

In accordance with these standards, a motion for summary judgment may only be denied "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587 (citation omitted). Therefore, the Third Circuit has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." Petruzzi's IGA Supermarkets v. Darling-Del. Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Finally, the standard for summary judgment remains unaffected where the parties have filed cross-motions for summary judgment. In deciding cross-motions for summary judgment, the court must consider each party's motion separately and independently. Panhandle E. Pipe Line Co. v. Utilicorp United Inc., 928 F. Supp. 466, 470 (D. Del. 1996) (citing Williams v. Phila. Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994)).

**B.    Wachovia's Motion for Summary Judgment**

Wachovia seeks summary judgment in its favor on the issue of whether it has an enforceable security interest in the JLH Account. Wachovia asserts that it has established all elements necessary to show that it has an enforceable security interest in this account. Article 9 of the U.C.C., adopted in all relevant respects in California, provides that a security interest attaches to collateral when it becomes enforceable against the debtor. Cal. Com. Code § 9203(a). Specifically with respect to deposit accounts, U.C.C. § 9-203 provides that a security

interest becomes enforceable when the following three conditions are satisfied: (1) value has been given; (2) there is a valid security agreement and the collateral is a deposit account over which the secured party has control; and (3) the debtor has rights in the collateral or the power to transfer rights in the collateral.  CAL. COM. CODE §§ 9203(b), 9104(a)(1).

The Trustee does not dispute that value has been given or that Wachovia has control over the JLH Account.  The Trustee does dispute, however, that WL Homes has rights in the JLH Account sufficient to effectuate a pledge of this account as security to Wachovia.  To prevail on its motion, Wachovia has the burden to provide sufficient factual support in defense of each of the elements of an enforceable security interest.  The Court addresses each element in turn.

### 1.   <u>Value Given</u>

Wachovia asserts that value has been given as required by U.C.C. § 9-203.  It is well established that the extension of credit constitutes value.  CAL. COM. CODE § 1204 ("[A] person gives value for rights if the person acquires them . . . in return for a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection . . . .").

Here, the Loan Agreement between Wachovia and WL Homes establishes that Wachovia has given value to WL Homes in exchange for its security interest in the JLH Account.  The Trustee does not dispute Wachovia's assertion that value has been given or the validity of the Loan Agreement.  Accordingly, the Court finds that value has been given, such that the first prong of an enforceable security interest in the JLH Account has been established.

2.      **Valid Security Agreement and Wachovia's Control over the JLH Account**

Wachovia also asserts that there is a valid security agreement and that Wachovia has the requite control over the JLH Account.  The Loan Agreement containing the Security Interest Provision is a security agreement whose validity is uncontested.  Thus the Court concludes a valid security agreement exists.

The U.C.C. provides that a secured party has control over a deposit account if the secured party is the bank in which the account is maintained.  CAL. COM. CODE § 9014.  Here, Wachovia asserts that it has control over the JLH Account by virtue of being the banking institution at which this account is maintained.  To support its contention, Wachovia has submitted an account statement along with the depository authorization and agreement certificate (the "Depository Certificate") pursuant to which the JLH Account was opened.  Again, the Trustee disputes neither that the JLH Account is a deposit account maintained at Wachovia, nor that Wachovia has control over this account by virtue of its banking relationship.  Accordingly, the Court finds that Wachovia has the requisite control over the JLH Account, such that the second prong of an enforceable security interest in the JLH Account has been established.

3.      **WL Homes' Rights in the JLH Account**

Finally, Wachovia asserts that WL Homes has sufficient rights in the JLH Account to satisfy the U.C.C. requirements for attachment of its security interest in this account.  Wachovia relies upon four independent legal theories to show that WL Homes has rights in the JLH Account.  First, Wachovia asserts that WL Homes exerts sufficient control over the JLH Account to give rise to the requisite rights in this account to grant the security interest.  Second, Wachovia asserts that JLH consented and impliedly gave WL Homes permission to use the JLH Account as

10

collateral.  Third, Wachovia alleges that JLH should be estopped from denying the validity of

Wachovia's security interest in the JLH Account.  Finally, Wachovia invokes the alter ego

doctrine to allege the propriety of enforcing its security interest against JLH.  The Trustee

disputes Wachovia's assertion that WL Homes has sufficient rights in the JLH Account to

effectuate attachment.

The Court finds that WL Homes has sufficient rights in the JLH Account for two

independent reasons: (1) WL Homes' use and control of the JLH Account, and (2) JLH's consent

and permission to use the JLH Account as collateral.  Because each of these theories

independently establishes that WL Homes has sufficient rights in the JLH Account for the

purpose of granting a security interest in the account, the Court does not reach WL Homes'

estoppel and alter ego arguments.

<h4>a.    <u>Use and Control</u></h4>

Under the U.C.C., a debtor need not have title to collateral in order to grant a security

interest in such collateral.  The Third Circuit has held that "[Article 9 of the U.C.C.] does not

specify the quantum of 'rights' which a debtor must have in collateral to support a security

interest: evidently less than full 'legal title' will do . . . ."  <u>In re Ferandos</u>, 402 F.3d 147, 156 (3d

Cir. 2005).  Case law teaches that "control over the collateral, rather than record ownership, is

the key factor in determining a debtor's rights in collateral" for the purpose of granting a security

interest.  <u>First Nat'l Bank of Omaha v. Pleasant Hollow Farm, Inc.</u>, 532 N.W.2d 60, 63 (S.D.

1995).  The Courts of Appeal in the Eleventh Circuit and the Ninth Circuit have both held that

while mere possession of collateral is not sufficient to establish that a debtor has rights in such

collateral, any right beyond mere possession, including the right to use and control the collateral,

suffices to establish the debtor's rights for the purpose of attachment of a security interest in such collateral. Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.), 113 F.3d 1091, 1103 (9th Cir. 1997) ("While section 9203(1)(c) does not require that a debtor own or hold title to the collateral, mere possession of collateral by a debtor is not sufficient to constitute 'rights in the collateral' under section 9203. Where a debtor has rights to collateral beyond naked possession, a security interest may attach to such rights.") (citations omitted); Merchants Bank v. Atchison (In re Atchison), 832 F.2d 1236, 1239 (11th Cir. 1987) ("[A] debtor's rights in the collateral may be found from any rights going beyond mere possession, such as the right to use and control the collateral.") (citations omitted). The court in Atchison, for example, determined that the debtor retained use and control of certain equipment that was pledged as collateral "because the equipment was in everyday use at the [debtor's] lumberyard." Atchinson, 832 F.2d at 1240.

Here, Wachovia asserts that WL Homes has sufficient rights in the JLH Account to grant a security interest in this account because WL Homes has the right to use and control this account. In support of its assertion, Wachovia directs the Court's attention to the Depository Certificate, pursuant to which five of the seven signers who are authorized to manage the JLH Account are exclusively WL Homes officers. The other two signers—Wayne J. Stelmar and Kimberly Forbes—are officers of both WL Homes and JLH.

As additional support for Wachovia's allegation that WL Homes controls the JLH Account, Wachovia cites to the deposition testimonies of James Chang, the Controller at WL Homes, and Kimberly Wack of Aon, the manager of JLH that WL Homes employed. Mr. Chang stated that "if anybody [from JLH] needed to transfer [money out of the JLH Account at

Wachovia], they would have to contact [him]." Whooley Declaration, Ex. 6 at 50:13-19. In response to a question about whether "the wrong people were identified as authorized representatives" with respect to the JLH Account, Ms. Wack testified that "[a]s long as they're all WL Homes employees, [she] would not see anything wrong with that." Whooley Declaration, Ex. 5 at 112:2-6. Based on these factual allegations, it appears that the JLH Account has been exclusively controlled by WL Homes.

The Trustee has not come forward with any evidence that contradicts Wachovia's allegations concerning WL Homes' use and control of the JLH Account. Without factual support, the Trustee's mere contention that "WL Homes had no legal rights in the [JLH Account]" is insufficient to withstand a properly supported motion for summary judgment on this issue. Accordingly, the Court accepts Wachovia's uncontroverted evidence that WL Homes has the right to use and control the JLH Account and therefore has had sufficient rights in the JLH Account to give rise to Wachovia's security interest in it.

### b.    Consent and Permission

The established case law is clear that a debtor may grant a security interest in collateral that the debtor does not actually own if the owner of such collateral consents to such an arrangement, because "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest." Atchison, 832 F.2d at 1239 (citations omitted); see also K.N.C. Wholesale, Inc. v. Awmco, Inc., 128 Cal. Rptr. 345, 349 (Cal. Ct. App. 1976) ("[A] debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights

in the collateral,' when authorized to do so by the actual owner of the collateral.") (citations omitted).

A court may infer from the circumstances that an owner has granted permission to a debtor to use its property as collateral or has otherwise consented to the debtor's use of the owner's property as collateral.  In <u>Atchinson</u>, for instance, the owner of certain equipment signed a mortgage on behalf of a corporation of which he was an officer and shareholder, pursuant to which he pledged his equipment as security for the repayment of the mortgage.  The <u>Atchinson</u> court held that the owner of the collateral at issue had "himself signed the mortgage on behalf of the corporation; even if he did own the [collateral], his signature for [the corporation] was sufficient to infer his consent to its use as collateral."  <u>Atchison</u>, 832 F.2d at 1239.  Similarly, the court in <u>K.N.C. Wholesale</u> inferred that a subsidiary had impliedly consented to the pledge of its equipment by its parent for the purpose of securing a loan by a lender to the parent, on the condition that the parent obtain a liability release for the same loan from the lender in favor of the subsidiary.  <u>K.N.C. Wholesale</u>, 128 Cal. Rptr. at 348.

Here, based upon Wachovia's proffered evidence, the Court concludes that JLH has consented to WL Homes' pledge of the JLH Account as collateral for the Loan Agreement. Pursuant to the Loan Agreement and the Security Interest Provision therein, WL Homes pledged to maintain the JLH Account with Wachovia and granted a security interest in this account to Wachovia to secure WL Homes' obligation under the Loan Agreement.  Mr. Stelmar subsequently signed the Loan Letters, pursuant to which WL Homes reaffirmed all of its obligations to Wachovia under the Loan Agreement.

Even though Mr. Stelmar signed the Loan Letters on behalf of WL Homes, his concurrent position as president of JLH cannot be overlooked.  Courts have held that "[i]f the president, vice-president or director of a corporation has knowledge or notice of a fact, knowledge or notice of that fact is generally imputed to the corporation."  In re Pubs, Inc. of Champaign, 618 F.2d 432, 438 (7th Cir. 1980) (citations omitted).  See also Buchanan v. Reliance Ins. Co. (In re Color Tile Inc.), 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the principal.") (citing Am. Sur. Co. v. Pauly, 170 U.S. 133, 153 (1898)).  Therefore, Mr. Stelmar's knowledge of WL Homes' pledge of the JLH Account as security to Wachovia may be properly imputed to JLH, such that JLH is chargeable with Mr. Stelmar's knowledge as of such pledge.[4]

Moreover, as in Atchison, Mr. Stelmar's signature on behalf of WL Homes is further evidence of his consent to such an arrangement on behalf of JLH.  Under the doctrine of apparent authority, Wachovia was entitled to believe that Mr. Stelmar had the requisite authority to consent to and reaffirm WL Homes' pledge of the JLH Account on behalf of JLH.  The Third Circuit has cautioned that "[a]pparent authority can exist only to the extent that it is reasonable

---

[4]    The Trustee asserts, and refers to deposition testimony in support his assertion, that WL Homes and JLH were unaware of the Security Interest Provision in the Loan Agreement, pursuant to which WL Homes granted Wachovia a security interest in the JLH Account and the Laing Luxury Accounts.  However, "[i]t has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect.  In essence, people are presumed to be bound by what they sign."  In re Schwalb, 347 B.R. 726, 743 (Bankr. D. Nev. 2006) (citations omitted). Therefore, whether Mr. Stelmar was subjectively aware of the pledge of the JLH Account is of no moment because he is charged with notice of the contents of the Loan Letters, and to the extent that they referred to and reaffirmed WL Homes' obligations in the Loan Agreement, Mr. Stelmar is thereby also charged with notice of the contents of the Loan Agreement.  Accordingly, through Mr. Stelmar, JLH is chargeable with the knowledge of Wachovia's security interest in the JLH Account.

for the third party dealing with the agent to believe the agent is authorized." Burtch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 345 (3d Cir. 2004) (internal quotation marks omitted) (citation omitted).  See also Universal Computer Sys., Inc. v. Med. Servs. Ass'n of Pa., 628 F.2d 820, 823 (3d Cir. 1980) ("The test for determining whether an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.'") (citation omitted).

Here, in light of Mr. Stelmar's position as the president of JLH, Wachovia was entitled to rely on the presumption that Mr. Stelmar had sufficient authority to consent to the Security Interest Provision in the Loan Agreement, which was subsequently affirmed pursuant to the Loan Letters.  The fact that Mr. Stelmar did not contest the explicit acknowledgement of the obligations, including those in the Security Interest Provision, provides a sufficient basis for the Court to infer that he consented to them.  The Court concludes that Mr. Stelmar's signature on the Loan Letters is sufficient evidence of both JLH's awareness of Wachovia's security interest and JLH's consent and implicit permission to use the JLH Account for such purpose.

Wachovia has carried its burden of establishing that WL Homes has the requisite rights in the JLH Account, both by virtue of its use and control of the JLH Account and by virtue of JLH's implied consent.  Accordingly, Wachovia is entitled to summary judgment on the issue that it has an enforceable security interest in the JLH Account.

**C.**     **The Trustee's Motion for Summary Judgment**

The Trustee has cross-moved for summary judgment, seeking a declaratory judgment of the Court that (1) JLH was legally prohibited from pledging the JLH as security, and (2) JLH neither authorized nor ratified WL Homes' pledge of the JLH Account as security to Wachovia.

**1.**     **Arizona Insurance Law**

The Trustee argues that the pledge of the JHL Account violates Arizona law and is therefore invalid on the ground of illegality.  Specifically, the Trustee cites to five Arizona statutory provisions in support of his argument.

First, the Trustee argues that pledging the JLH Account would have violated the requirement that a captive insurer "possess[] and thereafter maintain[] minimum unimpaired paid-in capital and surplus." ARIZ. REV. STAT. ANN. § 20-1098.03(A) (West).  In the case of a pure captive insurer, a categorization that indisputably applies to JLH,  the minimum statutory amount is $250,000.  Id. § 20-1098.03(A)(1).  The Trustee argues that the security interest in the JLH Account would have caused JLH's capital and surplus to drop below the required minimum.  However, Wachovia has proffered evidence in the form of a bank statement that could lead the Court to conclude that a security interest in the JLH Account would not cause JLH to drop below the minimum statutory amount.  Viewing the facts in the light most favorable to Wachovia, the Court cannot summarily find that this provision has been violated.

Second, the Trustee alleges that JLH could have pledged its assets only with the approval of the Arizona Department of Insurance (the "DOI").  Under Arizona insurance law, a "captive insurer may pledge, with the approval of [DOI], any additional prescribed capital and surplus, whether in the form of cash, another allowable asset or any irrevocable and unconditional letter

of credit that contains an evergreen clause." Id. § 20-1098.03(C).  The Trustee avers the absence

of such approval, and Wachovia has not alleged otherwise.  However, as discussed earlier, it is

WL Homes, and not JLH, that has pledged the JLH Account as collateral for the Loan

Agreement.  Thus, it appears that JLH has not violated this provision.  However, to the extent

that JLH may be found to have violated this provision, the only consequence of such a violation

would be the revocation of JLH's license or the refusal of the DOI to renew such license. See id.

§ 20-1098.03(A).

Third, the Trustee argues that pledging the JLH Account would have threatened JLH's

solvency and would therefore not be permitted by the DOI.  Based upon the relevant statute, "a

pure captive insurer is not subject to restrictions on allowable investments, except that [the DOI]

may prohibit or limit any investment that threatens the solvency or liquidity of the pure captive

insurer." Id. § 20-1098.10(B).  This provision does not appear to apply to the facts at bar

because there is no contention that JLH has made any "investments."  Moreover, as noted above,

the financial impact of the pledge of the JLH Account is disputed, and the Court must view the

facts in the light most favorable to Wachovia.  Finally, this provision empowers the DOI to

restrict JLH's investments but does not actually prohibit, restrict, or penalize such investments.

Thus, the Court cannot find that JLH has violated this provision.

Fourth, the Trustee asserts that the pledge of the JLH Account would have violated the

restrictions placed on a captive insurer with respect to loans.  Under Arizona law, "[o]nly a pure

captive insurer may make loans to its affiliates." Id. § 20-1098.10(C).  Such a loan must be

evidenced by a note, and "[b]efore making any such loan, the pure captive insurer shall obtain

the [DOI's] written approval to make the loan and approval for the form of the note." Id.  The

evidence is undisputed that JLH and WL Homes did not execute a note or loan agreement, with or without DOI approval.  However, there is no allegation that JLH actually made a "loan" to WL Homes and thereby violated this provision.  Moreover, there is no corollary provision that would invalidate a pledge of JLH's assets, even in the event that such a pledge is deemed to be a "loan" under such provision.

Lastly, the Trustee argues that the pledge of the JLH Account would have violated the requirement that a captive insurer obtain DOI approval "before implementing any material change in its plan of operations." Id. § 20-1098.22.  The Trustee asserts, without any factual allegations in support thereof, that a pledge of the JLH Account "would no doubt have a material change in [JLH's] plan of operations."  In rebuttal, Wachovia contends that, following the grant of the security interest, JLH "continued its operations normally during 2008 and even realized a net profit during that year."  Neither party has proffered any evidence to corroborate their respective positions.  Accordingly, the Court finds that the Trustee has not carried its burden of establishing that the pledge of the JLH Account constitutes a "material change in its operation."

Accordingly, the Court finds that the Trustee is not entitled to summary judgment in its favor on the issue of whether the pledge of the JLH Account has violated applicable Arizona insurance law.[5]

---

[5]     Furthermore, the Court finds that to the extent that any provisions of Arizona insurance law may have been violated on account of the pledge of the JLH Account, such violations, if any, would not invalidate an otherwise valid security interest held by Wachovia.  Under California law, "a borrower cannot avoid payment on his loan on the ground that the loan was made in violation of statutory provisions regulating the maximum amount of loans which a lending institution may make," Coronet Credit Corp. v. West Thrift Co., 53 Cal. Rptr. 433, 443 (Cal. Ct. App. 1966), because such a result could inequitably reward the party who committed such a violation.  At most, JLH's violation would be redressed through statutory penalties and fines.

**2.**    **JLH's Authorization and/or Ratification**

The Trustee also requests summary judgment that JLH is not a party to the Loan Agreement pursuant to which Wachovia asserts its security interest in the JLH Account.  The Court notes that there is no factual dispute on the issue of whether JLH is a party to the Loan Agreement, and the Loan Agreement itself makes it abundantly clear that WL Homes and Wachovia are the only parties to this agreement.  Accordingly, the Court must grant summary judgment in the Trustee's favor on this issue.  However, the Court notes that whether JLH is a party to the Loan Agreement is immaterial to the issue of whether Wachovia has an enforceable security interest in the JLH Account.  Similarly, whether JLH has authorized and/or ratified the Loan Agreement and/or the pledge of the JLH Account as collateral is equally immaterial, so long as WL Homes has sufficient rights in the JLH Account to grant the security interest, and for the reasons articulated above, the Court has already found that WL Homes has the requisite rights to effectuate an enforceable security interest in favor of Wachovia in the JLH Account.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant the motion for summary judgment filed by Wachovia.[6]  The Court will deny the motion for summary judgment filed by the Trustee to the extent that it seeks a declaration that Wachovia's security interest is invalid.  An appropriate Order follows.

BY THE COURT:

Dated:     Wilmington, Delaware
           May 25, 2011
                                    _____
                                    Brendan Linehan Shannon
                                    United States Bankruptcy Judge

---

[6]     The Court notes that, with respect to the JLH Account, WL Homes and JLH have asserted counterclaims against Wachovia for conversion, turnover pursuant to 11 U.S.C. § 542, and fraudulent transfer.  Adv. Docket No. 24, ¶¶ 136-59.  These counterclaims and causes of action are not presently before the Court in the context of the cross-motions for summary judgment at bar.