

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | : |  |
|  | : |  |
| WL HOMES LLC, | : | Bankruptcy Case No. 09-10571 (BLS) |
| Debtor. | : | Adv. No. 09-50514 |
|  | : |  |
| GEORGE L. MILLER, et al., | : |  |
|  | : |  |
| Appellants, | : |  |
|  | : |  |
| v. | : | Civil Action No. 11-619-RGA |
|  | : | Consolidated |
| WACHOVIA BANK NATIONAL | : |  |
| ASSOCIATION | : |  |
|  | : |  |
| Appellee. | : |  |

## MEMORANDUM OPINION

Daniel K. Astin, Esq., Ciardi, Ciardi & Astin, Wilmington, Delaware; Steven M. Coren, Esq. (argued), Kaufman, Coren & Ress P.C., Philadelphia, Pennsylvania; Attorneys for Appellants George L. Miller and JLH Insurance Corp.

Francis A. Monaco, Jr., Esq., Womble Carlyle Sandridge & Rice, LLP, Wilmington, Delaware; James D. Whooley, Esq. (argued), Millbank, Tweed, Hadley & McCloy, Los Angeles, California; Attorneys for Appellee Wachovia Bank, National Association.

August 13, 2012
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

These are consolidated appeals from a reported decision of the Bankruptcy Court. *See In re WL Homes,* 452 B.R. 138 (Bankr. D. Del. 2011).   The Bankruptcy Court granted Wachovia Bank's motion for summary judgment, concluding that Wachovia had a security interest in a $10,000,000 account of WL Homes' subsidiary, JLH Insurance Corp.   This Court has jurisdiction under 28 U.S.C. § 158(a).

The standard of review is plenary. *See In re W/B Associates*, 196 F. App'x 105, 107-08 (3d Cir. 2006) (The Court asks, "[I]s there no genuine issue of material fact, and [is Wachovia] entitled to judgment as a matter of law?").

The Bankruptcy Court set forth the facts upon which it based its decision:

> WL Homes had formed JLH Insurance Corporation ("JLH") under the Arizona Department of Insurance [laws] as a captive and wholly owned insurance company for the express purpose of paying claims against WL Homes arising out of its business activities. WL Homes capitalized JLH by depositing $10 million into a bank account (the "JLH Account"). JLH remains a non-debtor affiliate, but as a wholly owned subsidiary of WL Homes, it is under the control of the Trustee.

> In 2007, WL Homes entered into a line of credit loan agreement (the "Loan Agreement") with Wachovia Bank. To induce the Loan Agreement and to secure WL Homes' repayment obligation, the Loan Agreement includes a provision (the "Security Interest Provision") pursuant to which WL Homes granted a security interest to Wachovia in the JLH Account and two other deposit accounts held at Wachovia (the "Laing Luxury Accounts"). The Security Interest Provision states, in relevant part:

>> [WL Homes] shall maintain its ... JLH Account ... with [Wachovia]. The funds on deposit in the JLH Account shall at no time be less than $10,000,000.00. [WL Homes] shall also maintain its Laing Luxury Accounts ... with [Wachovia]. The JLH Account and the Laing Luxury Accounts are collectively referred to as the Deposit Accounts. [WL Homes] grants to [Wachovia] a security interest in the Deposit Accounts.

Loan Agreement ¶ 6.5.

2

In 2008, WL Homes reaffirmed all of its obligations under the Loan Agreement to
Wachovia pursuant to two loan agreement letters (collectively, the "Loan Letters"), dated
June 23, 2008 and July 31, 2008, respectively. The Loan Letters were executed by Wayne
Stelmar, who at all relevant times was the CFO of WL Homes and the president of JLH.

*WL Homes,* 452 B.R. at 140-41. The Bankruptcy Court set forth its legal analysis:

> Wachovia seeks summary judgment in its favor on the issue of whether it has an
> enforceable security interest in the JLH Account. Wachovia asserts that it has established
> all elements necessary to show that it has an enforceable security interest in this account.
> Article 9 of the U.C.C., adopted in all relevant respects in California, provides that a
> security interest attaches to collateral when it becomes enforceable against the debtor.
> Cal. Com. Code § 9203(a). Specifically with respect to deposit accounts, U.C.C. § 9–203
> provides that a security interest becomes enforceable when the following three conditions
> are satisfied: (1) value has been given; (2) there is a valid security agreement and the
> collateral is a deposit account over which the secured party has control; and (3) the debtor
> has rights in the collateral or the power to transfer rights in the collateral. Cal. Com. Code
> §§ 9203(b), 9104(a)(1).
>
> The Trustee does not dispute that value has been given or that Wachovia has control
> over the JLH Account. The Trustee does dispute, however, that WL Homes has rights in
> the JLH Account sufficient to effectuate a pledge of this account as security to Wachovia.
> To prevail on its motion, Wachovia has the burden to provide sufficient factual support in
> defense of each of the elements of an enforceable security interest. The Court addresses
> each element in turn.
>
> . . . .
>
> **3. *WL Homes' Rights in the JLH Account***
>
> Finally, Wachovia asserts that WL Homes has sufficient rights in the JLH Account
> to satisfy the U.C.C. requirements for attachment of its security interest in this account.
> Wachovia relies upon four independent legal theories to show that WL Homes has rights
> in the JLH Account. First, Wachovia asserts that WL Homes exerts sufficient control
> over the JLH Account to give rise to the requisite rights in this account to grant the
> security interest. Second, Wachovia asserts that JLH consented and impliedly gave WL
> Homes permission to use the JLH Account as collateral. Third, Wachovia alleges that
> JLH should be estopped from denying the validity of Wachovia's security interest in the
> JLH Account. Finally, Wachovia invokes the alter ego doctrine to allege the propriety of
> enforcing its security interest against JLH. The Trustee disputes Wachovia's assertion that
> WL Homes has sufficient rights in the JLH Account to effectuate attachment.
>
> The Court finds that WL Homes has sufficient rights in the JLH Account for two
> independent reasons: (1) WL Homes' use and control of the JLH Account, and (2) JLH's

3

consent and permission to use the JLH Account as collateral. Because each of these theories independently establishes that WL Homes has sufficient rights in the JLH Account for the purpose of granting a security interest in the account, the Court does not reach WL Homes' estoppel and alter ego arguments.

**a.** *Use and Control*

Under the U.C.C., a debtor need not have title to collateral in order to grant a security interest in such collateral. The Third Circuit has held that "[Article 9 of the U.C.C.] does not specify the quantum of 'rights' which a debtor must have in collateral to support a security interest: evidently less than full 'legal title' will do...." *In re Ferandos,* 402 F.3d 147, 156 (3d Cir. 2005). Case law teaches that "control over the collateral, rather than record ownership, is the key factor in determining a debtor's rights in collateral" for the purpose of granting a security interest. *First Nat'l Bank of Omaha v. Pleasant Hollow Farm, Inc.,* 532 N.W.2d 60, 63 (S.Dak. 1995). The Courts of Appeals in the Eleventh Circuit and the Ninth Circuit have both held that while mere possession of collateral is not sufficient to establish that a debtor has rights in such collateral, any right beyond mere possession, including the right to use and control the collateral, suffices to establish the debtor's rights for the purpose of attachment of a security interest in such collateral. *Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.),* 113 F.3d 1091, 1103 (9th Cir. 1997) ("While section 9203(1)(c) does not require that a debtor own or hold title to the collateral, mere possession of collateral by a debtor is not sufficient to constitute 'rights in the collateral' under section 9203. Where a debtor has rights to collateral beyond naked possession, a security interest may attach to such rights.") (citations omitted); *Merchants Bank v. Atchison (In re Atchison),* 832 F.2d 1236, 1239 (11th Cir. 1987) ("[A] debtor's rights in the collateral may be found from any rights going beyond mere possession, such as the right to use and control the collateral.") (citations omitted). The court in *Atchison,* for example, determined that the debtor retained use and control of certain equipment that was pledged as collateral "because the equipment was in everyday use at the [debtor's] lumberyard." *Atchison,* 832 F.2d at 1240.

Here, Wachovia asserts that WL Homes has sufficient rights in the JLH Account to grant a security interest in this account because WL Homes has the right to use and control this account. In support of its assertion, Wachovia directs the Court's attention to the Depository Certificate, pursuant to which five of the seven signers who are authorized to manage the JLH Account are exclusively WL Homes officers. The other two signers—Wayne J. Stelmar and Kimberly Forbes—are officers of both WL Homes and JLH.

As additional support for Wachovia's allegation that WL Homes controls the JLH Account, Wachovia cites to the deposition testimonies of James Chang, the Controller at WL Homes, and Kimberly Wack of Aon, the manager of JLH that WL Homes employed. Mr. Chang stated that "if anybody [from JLH] needed to transfer [money out of the JLH Account at Wachovia], they would have to contact [him]." Whooley Declaration, Ex. 6 at

4

50:13–19. In response to a question about whether "the wrong people were identified as authorized representatives" with respect to the JLH Account, Ms. Wack testified that "[a]s long as they're all WL Homes employees, [she] would not see anything wrong with that." Whooley Declaration, Ex. 5 at 112:2–6. Based on these factual allegations, it appears that the JLH Account has been exclusively controlled by WL Homes.

The Trustee has not come forward with any evidence that contradicts Wachovia's allegations concerning WL Homes' use and control of the JLH Account. Without factual support, the Trustee's mere contention that "WL Homes had no legal rights in the [JLH Account]" is insufficient to withstand a properly supported motion for summary judgment on this issue. Accordingly, the Court accepts Wachovia's uncontroverted evidence that WL Homes has the right to use and control the JLH Account and therefore has had sufficient rights in the JLH Account to give rise to Wachovia's security interest in it.

**b. *Consent and Permission***

The established case law is clear that a debtor may grant a security interest in collateral that the debtor does not actually own if the owner of such collateral consents to such an arrangement, because "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest." *Atchison*, 832 F.2d at 1239 (citations omitted); *see also K.N.C. Wholesale, Inc. v. Awmco, Inc.*, 56 Cal.App.3d 315, 128 Cal.Rptr. 345, 349 (1976) ("[A] debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights in the collateral,' when authorized to do so by the actual owner of the collateral.") (citations omitted).

A court may infer from the circumstances that an owner has granted permission to a debtor to use its property as collateral or has otherwise consented to the debtor's use of the owner's property as collateral. In *Atchison*, for instance, the owner of certain equipment signed a mortgage on behalf of a corporation of which he was an officer and shareholder, pursuant to which he pledged his equipment as security for the repayment of the mortgage. The *Atchison* court held that the owner of the collateral at issue had "himself signed the mortgage on behalf of the corporation; even if he did own the [collateral], his signature for [the corporation] was sufficient to infer his consent to its use as collateral." *Atchison*, 832 F.2d at 1239. Similarly, the court in *K.N.C. Wholesale* inferred that a subsidiary had impliedly consented to the pledge of its equipment by its parent for the purpose of securing a loan by a lender to the parent, on the condition that the parent obtain a liability release for the same loan from the lender in favor of the subsidiary. *K.N.C. Wholesale*, 128 Cal.Rptr. at 348.

Here, based upon Wachovia's proffered evidence, the Court concludes that JLH has consented to WL Homes' pledge of the JLH Account as collateral for the Loan Agreement. Pursuant to the Loan Agreement and the Security Interest Provision therein,

WL Homes pledged to maintain the JLH Account with Wachovia and granted a security interest in this account to Wachovia to secure WL Homes' obligation under the Loan Agreement. Mr. Stelmar subsequently signed the Loan Letters, pursuant to which WL Homes reaffirmed all of its obligations to Wachovia under the Loan Agreement.

Even though Mr. Stelmar signed the Loan Letters on behalf of WL Homes, his concurrent position as president of JLH cannot be overlooked. Courts have held that "[i]f the president, vice-president or director of a corporation has knowledge or notice of a fact, knowledge or notice of that fact is generally imputed to the corporation." *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 438 (7th Cir. 1980) (citations omitted). *See also Buchanan v. Reliance Ins. Co. (In re Color Tile Inc.)*, 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the principal.") (citing *Am. Sur. Co. v. Pauly*, 170 U.S. 133, 153 (1898)). Therefore, Mr. Stelmar's knowledge of WL Homes' pledge of the JLH Account as security to Wachovia may be properly imputed to JLH, such that JLH is chargeable with Mr. Stelmar's knowledge as of such pledge.

Moreover, as in *Atchison*, Mr. Stelmar's signature on behalf of WL Homes is further evidence of his consent to such an arrangement on behalf of JLH. Under the doctrine of apparent authority, Wachovia was entitled to believe that Mr. Stelmar had the requisite authority to consent to and reaffirm WL Homes' pledge of the JLH Account on behalf of JLH. The Third Circuit has cautioned that "[a]pparent authority can exist only to the extent that it is reasonable for the third party dealing with the agent to believe the agent is authorized." *Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 345 (3d Cir. 2004) (internal quotation marks omitted) (citation omitted). *See also Universal Computer Sys., Inc. v. Med. Servs. Ass'n of Pa.*, 628 F.2d 820, 823 (3d Cir. 1980) ("The test for determining whether an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.' ") (citation omitted).

Here, in light of Mr. Stelmar's position as the president of JLH, Wachovia was entitled to rely on the presumption that Mr. Stelmar had sufficient authority to consent to the Security Interest Provision in the Loan Agreement, which was subsequently affirmed pursuant to the Loan Letters. The fact that Mr. Stelmar did not contest the explicit acknowledgement of the obligations, including those in the Security Interest Provision, provides a sufficient basis for the Court to infer that he consented to them. The Court concludes that Mr. Stelmar's signature on the Loan Letters is sufficient evidence of both JLH's awareness of Wachovia's security interest and JLH's consent and implicit permission to use the JLH Account for such purpose.

Wachovia has carried its burden of establishing that WL Homes has the requisite rights in the JLH Account, both by virtue of its use and control of the JLH Account and by virtue of JLH's implied consent. Accordingly, Wachovia is entitled to summary

6

judgment on the issue that it has an enforceable security interest in the JLH Account.

*WL Homes*, 452 B.R. at 144-48 (footnote omitted).

On appeal, JLH raises two primary arguments: (1) the Bankruptcy Court misapplied the

U.C.C. and resolved disputed material facts in order to find that WL Homes had "use and

control" over the bank account (D.I. 16, pp. 28-37); and (2) the Bankruptcy Court erroneously

decided that JLH had consented to the security interest, and resolved disputed material facts to do

so. (*Id.*, pp. 38-48).[1]

---

[1] JLH moves to supplement the record on appeal with documents that were not before the Bankruptcy Court. (D.I. 23). *See* Fed. R. App. P. 10(e). The documents are offered to support its argument that Wachovia knew that the Loan Agreement was unsecured, and of JLH's understanding that the Loan Agreement would be unsecured. This motion is denied.

JLH cites *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 97 (3d Cir. 1990), as support for its argument that the record may be supplemented by documents not considered in the Bankruptcy Court. The Third Circuit has repeatedly cited this case as support for *not* admitting documents outside the trial court's record. *See Fanor v. Alvarado*, 393 F. App'x 921, 924 (3d Cir. 2010); *Sindram v. Fox*, 374 F. App'x 302, 304 (3d Cir. 2010); *Webb v. City of Philadelphia*, 562 F.3d 256, 261 n.4 (3d Cir. 2009).

The Third Circuit has noted that in exceptional circumstances the record may be supplemented with material not before the trial court. *See Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 226 (3d Cir. 2009). The Third Circuit has identified three factors that may support allowing outside material on appeal: "(1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the [trial] court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a *habeas corpus* action." *Id.*

There are no exceptional circumstances here. JLH's documents would not "establish beyond any doubt" the proper outcome of its appeal. The Bankruptcy Court considered the argument JLH wishes to assert with the supplemental documents, and was not persuaded. *See WL Homes*, 452 B.R. at 147 n.4. JLH admits it does not raise any new legal issues with these documents. (D.I. 23 at 6). JLH contends these documents give its arguments "more force," but its assertions as the nonmoving party were accepted as true by the Bankruptcy Court. *WL Homes*, 452 B.R. at 143. These documents would add no value to JLH's argument. In addition, it would be an inefficient use of judicial resources to remand this case to the Bankruptcy Court for consideration of the additional documents. This is not a *habeas corpus* action. None of the three factors weighs in favor of granting JLH's motion. Therefore, JLH's motion to supplement the record with documents not presented to the Bankruptcy Court is denied.

**Use and Control.**

JLH makes three arguments about the Bankruptcy Court's "use and control" holding.  I will address the three of them, two of which are without merit, but one of which has merit.[2]

First, JLH argues that without WL Homes having JLH's actual consent to the pledging of the bank account, Wachovia could not obtain a valid security interest in the account.  (*See* D.I. 16, pp. 29-31).   JLH further argues that "deposit accounts" do not present the same possible questions of ownership as other sorts of property, and thus the "use and control" line of cases does not apply to deposit accounts.[3]  (*See* D.I. 16, pp. 35-37; D.I. 20, pp. 4-5).  Wachovia responds that WL Homes had sufficient use and control of the account so that Wachovia could obtain a security interest in it.  (D.I. 19, pp. 25-30).

There are numerous cases that state the law as being "that the debtor can only grant a security interest in whatever rights he has in the collateral.  [Article 9 of the UCC] does not specify the quantum of 'rights' which a debtor must have in collateral to support a security interest: evidently less than full 'legal title' will do and the secured party will get whatever rights the debtor had . . ." *In re Ferandos*, 402 F.3d 147, 156 (3d Cir. 2005).  "[M]ere possession of a collateral by a debtor is not sufficient to constitute rights in the collateral." *In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1103 (9th Cir. 1977).  The question here is whether WL

---

[2] I expect there will be an appeal.  Thus, in the interest of efficiency, it makes sense that I address all of the arguments.

[3] My recollection is that at oral argument (which has not been transcribed), JLH noted that this precise issue was a question of first impression.  While I do not agree with the Bankruptcy Court's resolution of the issue, the answer is not free from doubt.

8

Homes had something beyond mere possession of the JLH bank account. The Bankruptcy Court relied upon two facts for concluding that it did. The first fact was that all seven signers on the account were WL Homes officers, with only two of them also being JLH officers. In my opinion, that establishes possession of the money by WL Homes. It does not establish any right for WL Homes to use the money.[4] The second fact was the testimony (which was consistent with the bank documents) that if someone at JLH wanted to do something with the money in the bank account, the person would have had to contact WL Homes' Controller. The testimony was not that the Controller had any independent authority to manage the money. Rather, it was that he was the person who would perform the mechanics necessary to move the money. Again, in my opinion, this is entirely consistent with WL Homes having possession of the money. It falls short of establishing anything more in terms of WL Homes' control of the money. Thus, I do not believe the record relied upon by the Bankruptcy Court established WL Homes' use and control sufficient to give WL Homes "rights in the collateral" such that Wachovia's security interest is enforceable.

I think my conclusion is consistent with the case law. For example, in *In re Coupon Clearing Service*, even though the debtor did not have title to the funds, it could, by agreement, use the funds as part of its general operating funds. 113 F.3d at 1103. In *First Nat. Bank v. Pleasant Hollow Farm,* 532 N.W.2d 60, 63 (S.Dak. 1995), the debtor planted and grew the pledged collateral. In *In re Atchison*, 832 F.2d 1236, 1240 (11th Cir. 1987), the debtor used the pledged equipment "everyday . . . at the lumberyard." The sorts of use in these cases is in

---

[4] The representation at oral argument was that indeed, other than pledging the account for the $10,000,000 loan, WL Homes had not used the money for anything else. I am not aware of anything in the record inconsistent with this representation.

distinct contrast with the money that sat and did nothing in the pledged bank account.

Second, JLH argues that the Bankruptcy Court erred in relying upon an unsigned document. (*See* D.I. 16, pp. 32-33; D.I. 20, pp. 3-4). Wachovia responds that the argument was waived and is meritless. (*See* D.I. 19, pp. 13-15). I agree with JLH that the argument is not waived. I also agree with Wachovia that it does not provide any basis for reversing the Bankruptcy Court's decision.

The document at issue is the "Depository Authorization and Agreement Certificate." It related to the $10,000,000 account. There are entries on the form that, notwithstanding the instruction, "This Section Must Be Completed," are not completed. One of the incomplete sections is the Corporate Secretary's representation, complete with corporate seal, that JLH had duly authorized the opening of the account.

It might be beneficial for a bank to follow the instructions on its own forms. It would likely reduce its litigation risk. The issue here, however, is not Wachovia's attention to detail. Nor is it the Bankruptcy Court's attention to detail. The Bankruptcy Court cited the document for two points, only one of which is relevant to the issues in this appeal. The Bankruptcy Court cited the Depository Certificate for the point that "five of the seven signers who are authorized to manage the JLH account are exclusively WL Homes officers. The other two signers – Wayne J. Stelmar and Kimberly Forbes– are officers of both WL Homes and JLH." The Depository Certificate indeed states that these seven individuals are authorized signers on the account. The Depository Certificate does not state that JLH authorized the seven signers, and the Bankruptcy Court did not hold that the Certificate showed JLH had authorized the seven signers. Thus, the Bankruptcy Court committed no error in its use of the Depository Certificate.

10

Third, JLH argues that there was a disputed material fact about WL Homes' use and control of the bank account. (*See* D.I. 16, pp. 33-35). Wachovia disagrees. (*See* D.I. 19, pp. 15-16). The argument centers around deposition testimony about which individuals could authorize transfers of funds from the account. The Bankruptcy Court cited the testimony of WL Homes' Controller (Chang) and JLH's manager (Wack) for the proposition that the JLH account was exclusively controlled by employees of WL Homes. JLH characterizes this as an "improper fact-finding exercise," (D.I. 16, p. 32), and cites to various pieces of deposition testimony to suggest a disputed material fact.

The JLH excerpts generally do not raise a disputed material fact. For example, JLH cites Chang deposition testimony for the proposition that if Chang (who was a WL Homes employee and not a JLH employee) inputted a wire transfer on the JLH account, that "Kim Forbes c[ould] approve it." Forbes was an officer of both WL Homes and JLH. The excerpt gives no hint in which capacity she would be acting if she made such an approval. Thus, it does not raise a disputed fact. Further, there is no reference that I can find that it was cited to the Bankruptcy Court. *Cf.* Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials.").[5] If it had been cited, its point would have been undercut because JLH advised the Bankruptcy Court that Forbes was not an officer of JLH. *See* Bkr. Adv. Case No. 09-50514-BLS, D.I. 71 (Brief

---

[5] At oral argument, I asked for letter briefing on one issue. In its letter brief, JLH argued that there was a disputed material fact because the "summary judgment record presented to the bankruptcy court" included deposition testimony that would have created such a dispute. JLH admitted that it did not cite this testimony in its briefing, but argued that the bankruptcy court should have considered it. (D.I. 26). I reject this assertion. The workload of the bankruptcy judges is tremendous. When a party does not point the court to the record that supports its position, it cannot complain that the court did not find it. Fed. R. Civ. P. 56(c)(3); Fed. R. Civ. P. 56(e)(2). The fact that a court can consider uncited materials does not mean that it is error when it does not do so.

filed October 15, 2010, p. 8).

It does appear that the excerpts cited to me may raise one disputed fact, which is the extent of the authority that Chang had over the account. These deposition excerpts were not presented to the Bankruptcy Court, and therefore the argument is waived on appeal. Furthermore, I do not think that the Bankruptcy Court conclusion about Chang's personal authority to transfer JLH funds in the bank account is critical to the Court's decision. Therefore, the Bankruptcy Court committed no reversible error in considering the testimony about the ability to make bank transfers.

For the foregoing reasons, while I agree with much of what the Bankruptcy Court held, I do not agree with its legal conclusion that the evidence established that WL Homes had use and control of the JLH account sufficient so that its "rights in the collateral" permitted Wachovia to obtain a security interest in the bank account. Therefore, I turn to the alternate basis on which the Bankruptcy Court relied.

**Consent and Permission.**

Before the Bankruptcy Court, Wachovia argued that JLH consented to the security interest because its President, Wayne Stelmar, signed the Loan Agreement. The argument was hard to miss. It was captioned, "JLH Insurance Gave WL Homes Permission to Pledge the JLH Account as Security to Wachovia," and was supported by about four pages of argument. *See* Bkr. Adv. Case No. 09-50514-BLS, D.I. 62 (Brief filed September 21, 2010, pp. 32-36). In response, JLH did not address the argument. *See* Bkr. Adv. Case No. 09-50514-BLS, D.I. 71 (Brief filed October 15, 2010). The lack of response was noted in Wachovia's Reply. *See* Bkr.

Adv. Case No. 09-50514-BLS, D.I. 72 (Brief filed October 29, 2010, p. 8).[6]   At oral argument

before the Bankruptcy Court, however, JLH argued that any consent by Stelmar was invalid

without a JLH corporate resolution authorizing him to do so.  (Transcript of February 2, 2011,

Oral Argument, p.61).  Thus, JLH makes its arguments on appeal with more focus than it did in

the Bankruptcy Court.

    The Bankruptcy Court held that JLH had in fact consented to WL Homes' pledging of the

account.  It cited two cases as analogous.  In one of them, the corporate officer who pledged

equipment for a loan to a corporation was found to have permitted, *i.e.*, consented, to the use of

his individual equipment, giving the corporation rights in the collateral such that the equipment

could have been pledged.  *See In re Atchison*, 832 F.2d 1236, 1239 (11th Cir. 1987).  In the other,

a subsidiary was found to have agreed that the parent could use its equipment as security for a

loan.  *See K.N.C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 319, 128 Cal.Rptr. 345,

348 (1976).[7]  Both cases were decided after hearings, and involved the resolution of disputed

issues of fact.  This case presents a more difficult question than those two, as there is the

additional issue that Stelmar's actions, in order to bind JLH, have to be attributed to JLH.

    The only way to attribute Stelmar's actions to JLH is through agency law.  The

Bankruptcy Court did this two ways.  First, it found that his actions, since he was president of

---

    [6] At oral argument on February 2, 2011, before the Bankruptcy Court, Wachovia made
the same point.  Transcript, pp. 38-39.  I do not believe the transcript has been filed with the
Clerks of either the Bankruptcy Court or the District Court.

    [7] The Bankruptcy Court stated that the *K.N.C.* court found "implie[d] consent." *Id.* at
146-47.  I read the *K.N.C.* decision as the appeals court stating that the trial court "impliedly"
found consent, *id.* at 319, that is, the trial court did not explicitly state that it found consent.  I do
not read the *K.N.C.* decision to say that the consent was anything other than actual consent.

JLH, bound JLH.  Second, it found that he had apparent authority to act on JLH's behalf.  I think these are two separate theories.  The first is that JLH consented.    The second is that, even if JLH did not consent, it was reasonable for Wachovia to believe that JLH had consented.

Notice of a fact to a corporate officer is imputed to the corporation based on the officer's duties to the corporate principal, and the materiality of the information.  *See Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 106 (3d Cir. 2009).  A corporation, however, "is not charged with the legal consequences of an employee's knowledge of a fact that lies outside the scope of the employee's duties to the corporation." *Id.* at 107.  The Bankruptcy Court noted Stelmar signed the agreement as a director of WL Homes, but further noted that, "[Stelmar's] concurrent position as president of JLH cannot be overlooked."

JLH argues that JLH cannot be attributed with Stelmar's knowledge because Stelmar was acting on behalf of WL Homes and not on behalf of JLH in connection with the security agreement.  Stelmar was a corporate officer of both corporations.  The transaction involved the interests of both corporations.  Stelmar agreed to the pledging of $10,000,000 of JLH's money.  He signed the document as a corporate officer of WL Homes.  It does not follow that the disposition of what was a significant asset of JLH was either something about which he owed no duties to JLH or that was immaterial to JLH.  Indeed, the opposite is true.

Thus, the Bankruptcy Court's conclusion that JLH consented is a conclusion of law based upon undisputed facts.  It provides the basis for granting summary judgment to Wachovia, and therefore will be sustained.

The Bankruptcy Court, as noted, also relied upon "apparent authority" as a basis for for ruling in Wachovia's favor.  JLH argues that Wachovia did not reasonably rely on Stelmar's

14

apparent authority to pledge the JLH Account as a security interest to Wachovia. JLH contends

the doctrine of apparent authority flows entirely from the principal, and contends that JLH did

not commit any act to give Stelmar apparent authority.

Apparent authority is "that authority which, although not actually granted, the principal

knowingly permits the agent to exercise, or holds him out as possessing." *In re Mushroom*

*Transp. Co.*, 382 F.3d 325, 345 (3d Cir. 2004) (Pennsylvania law); *see Billops v. Magness*

*Constr. Co.*, 391 A.2d 196, 198 (Del. 1978) (to the same effect). "Traditionally, the doctrine of

apparent authority applies when a corporate official, such as a president, takes action in the name

of an entity in a situation when he lacks formal authority, but where by dint of his title and other

circumstantial facts the entity creates a reasonable impression that the official can bind the

entity." *Nichols v. Lewis*, 2008 WL 2253192, at *5 (Del. Ch. Apr. 25, 2008).   When broad

power is given to the president in the corporate bylaws, "the president as general manager

commands the power to do anything the corporation could do in the general scope and operation

of its business." *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 128 (3d Cir. 1998).

Had Stelmar signed as President of JLH – as opposed to as CFO of WL Homes – there

would be no doubt that his action bound JLH.[8]  The Bankruptcy Court stated:

> Mr. Stelmar's signature on behalf of WL Homes is further evidence of his consent
> to such an arrangement on behalf of JLH. . . . Here, in light of Mr. Stelmar's
> position as the President of JLH, Wachovia was entitled to rely on the
> presumption that Mr. Stelmar had sufficient authority to consent to the Security
> Interest Provision in the Loan Agreement.

The president of JLH had the apparent authority to bind JLH.

---

[8] It appears that Wachovia knew that Stelmar was the President of JLH.  I do not see any
dispute on this point in the appellate briefing, and thus I accept it as a fact.

JLH argues that Wachovia's reliance on Stelmar's conduct to create apparent authority was not reasonable. (D.I. 16 at 48). This argument might carry some force in a different legal context, for example, if Wachovia was arguing that JLH was estopped from asserting WL Homes' lack of rights in the collateral. *See First Nat. Bank v. Pleasant Hollow Farm*, 532 N.W.2d 60, 63-64 (S.Dak. 1995); *In the Matter of Pubs, Inc.,* 618 F.2d 432, 438-39 (7th Cir. 1980). In this context -- the authority of the President of JLH to consent to its parent's use of its money – the argument that Wachovia should have done more to verify Stelmar's authority to so act, is without merit.

An order consistent with this Opinion will be entered.